# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO.: 3:09CV398

| | |
|---|---|
| INDIANTOWN COGENERATION, L.P., | )<br>)<br>) |
| Applicant, | )<br>) |
| vs. | )     ORDER |
| CENTURY COAL, LLC, | )<br>)<br>) |
| Respondent. | )<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff Indiantown Cogeneration, L.P.'s Motion to Remand (Doc. 4), filed September 24, 2009. The parties have filed responsive pleadings and this matter is now ripe for disposition. For the reasons articulated below, Plaintiff's motion is GRANTED.

## I. BACKGROUND

At issue in this case is an arbitration award rendered on August 19, 2009, by a panel of three arbitrators (the "Panel") after a three-day evidentiary hearing. The Panel awarded Indiantown Cogeneration, L.P. ("Indiantown") $3,736,841 in damages arising from Century Coal LLC's ("Century") breach of the parties' Coal Supply Agreement, $100,000 in monetary sanctions for Century's discovery abuses during the arbitration, and $34,806.22 in arbitrator compensation that Indiantown advanced on Century's behalf after Century refused to pay. Indiantown seeks confirmation of the award, whereas Century asks for vacatur or, in the alternative, modification.

1

In 2005, the parties entered into a Coal Supply Agreement (the "CSA") pursuant to which Century was to supply coal to Indiantown. The CSA required all disputes to be resolved by arbitration in Charlotte, North Carolina, pursuant to the American Arbitration Association rules. Indiantown alleged that Century breached the CSA and, in 2008, Indiantown commenced arbitration. The hearing was held before a panel of three arbitrators in Charlotte from June 15-17, 2009. Following that hearing, the arbitrators issued an award on August 19, 2009, ordering Century to pay Indiantown the amount of $3,871,647.22.

On the day the arbitration award was issued, Indiantown filed an action in North Carolina Superior Court, Mecklenburg County, to confirm the award (Case No. 09-CVS-19557) pursuant to the North Carolina Arbitration Act (the "Application to Confirm"). A true copy of the Application to Confirm was attached to Century's Notice of Removal to this Court. At Indiantown's request, the state court scheduled a hearing on the confirmation for September 16, 2009. The Application to Confirm and the notice of hearing were properly served on Century on August 19, 2009, by personal service on Century's registered agent.

On September 15, 2009, Century filed its Notice of Removal to this Court. As set forth in the Notice of Removal, Century's only alleged basis for removal is under 28 U.S.C. § 1332 and § 1441(a), namely, original jurisdiction founded upon the diversity of citizenship between the parties. Century asserts that it is a Colorado limited liability company comprised solely of members who are citizens of Colorado and Kentucky. Indiantown is a limited partnership with two general partners and two limited partners. Each of the general partners and each of the limited partners is either a limited partnership or a limited liability company. In light of Indiantown's confidentiality concerns, the court will not dwell on Indiantown's business structure. It suffices for present purposes to note that the Missouri Department of Transportation

and Patrol Employees Retirement System ("MPERS") is a part of Indiantown's ownership waterfall. It is undisputed that Indiantown's citizenship is defined in part by looking to that of MPERS. Indiantown contends that Century's Notice of Removal and subsequent jurisdictional discovery fail to establish complete diversity. Accordingly, Indiantown argues that remand is required.

## II. LEGAL STANDARD

It is well-established that "removal jurisdiction is not a favored construction." *Nordan v. Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). Courts must construe removal statutes strictly. *Id.* In cases where federal jurisdiction is in doubt, remand is proper. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper. Id. District Courts within the Fourth Circuit have held that the removing party bears the burden to show the existence of federal jurisdiction and that burden must be met by a preponderance of the evidence. *See Beaver Coal Co., Ltd. v. Cabot Oil & Gas Corp.,* 2009 U.S. Dist. LEXIS 13271 (S.D. W. Va. Feb. 18, 2009); *Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 726 (D. Md. 2006); *Schwenck v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004).

Courts "adhere to [the] oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all members,' . . . 'the several persons composing such association,' . . . 'each of its members . . . .'" *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (internal citations omitted); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010). "[T[he citizenship of a limited partnership is determined by considering the citizenship of all of its partners, both general and limited.*" N.Y. State Teachers Retirement System v. Kalkus*, 764 F.2d 1015, 1019 (4th Cir. 1985). Similarly, the citizenship of an LLC is

3

determined by considering the citizenship of all the LLC's members. *Gen. Tech. Applications, Inc. v. Exro Ltd.*, 388 F.3d 114, 120-21(4th Cir. 2004). Thus, the citizenship of every partner in a limited partnership and all members of an unincorporated association must be reviewed. *See, e.g., Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93 (4th Cir. 1983).

### III. DISCUSSION

Indiantown makes three arguments in support of its motion to Remand. All three arguments are variations on Indiantown's contention that remand is proper because diversity of citizenship does not exist. First, Indiantown argues that one of its owners, MPERS is an arm of the state. Second, Indiantown argues that diversity of citizenship does not exist because two of its owners "may" be citizens of Colorado. Third, Indiantown argues that remand is proper because Century failed to meet its burden of establishing complete diversity, as the citizenship of some of Indiantown's owners remains unknown. Because the presence of MPERS violates the rule of complete diversity and requires this Court to remand the case to state court, this Court will not reach Indiantown's second and third arguments.

Indiantown's general and limited partners consist of various other limited partners and limited liability companies. Because Indiantown is a limited partnership, with a number of general partners, limited partners, and limited liability corporations in its ownership waterfall, Century must demonstrate that all of Indiantown's partners, both general and limited are diverse.

Indiantown contends that MPERS, a member of a limited partnership in Indiantown's ownership waterfall, is an arm of the State of Missouri. The presence of an arm of the state in Indiantown's ownership chain destroys diversity jurisdiction because: (1) state entities are not citizens of a particular state and therefore cannot be diverse; and (2) this stateless condition is imputed to a limited partnership in which the state entity holds a partnership interest.

4

A State us not a "citizen" for purposes of diversity jurisdiction. *See, e.g., Moor v. Cnty. Of Alameda*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *Stone v. South Carolina*, 117 U.S. 430, 433 (1886) ("There is no statute which authorizes the removal of a suit between a state and citizens on the ground of citizenship, for a state cannot, in the nature of things, be a citizen of any state."); *Wisconsin v. Md. Nat'l Bank*, 734 F.2d 1015, 1016 (4th Cir. 1984) (noting that 28 U.S.C. § 1332 "does not deal with cases in which a State is a party" and dismissing the State of Wisconsin's suit for lack of diversity). Accordingly, when one of the parties to a suit is an arm of the state, diversity is destroyed and the case must be remanded, even if diversity otherwise exists. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 261-63 (4th Cir. 2005) (remanding case for lack of diversity jurisdiction because the plaintiff's Maryland Stadium Authority and University of Maryland were arms of the state of Maryland); *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 304-08 (4th Cir. 2008) (affirming dismissal for lack of jurisdiction because plaintiff entities were arms of the state).

"In determining if a public entity is an alter ego of the sate, and therefore not a 'citizen' under § 1332, courts have generally looked to the standards" for "whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." *Md. Stadium Auth.*, 407 F.3d at 260. Courts consider a "nonexclusive list of four factors." *Hoover Universal*, 535 F.3d at 303 (quoting *Md. Stadium Auth.*, 407 F.3d at 261-62). First, the Court considers whether any recovery will inure to the benefit of the State. The benefit need not be a direct deposit to the state treasury, but may instead be indirect, such as a benefit to the entity that reduces the need for future state appropriations to the entity. *See id.* at 305-06. Second, the court considers the amount of control that the state has over the entity, including whether the state has a veto over

5

the entity's actions, controls the funding of the entity, or appoints the directors of the entity. *Id.* at 303. Third, the court considers whether the entity performs state or local functions. *Id.* Fourth, the court considers whether the state statutes and case law describe the entity as an instrumentality of the state or as an independent body. *Id.*

**A. Whether MPERS is an "arm of the state"**

Applying the Fourth Circuit's arm-of-state test, this Court finds that MPERS is an arm of the state of Missouri.

As to the first factor, the retirement system presently has substantial unfunded liability, which, by statute, must be funded by state appropriations. Mo. Rev. Stat. § 104.070. Accordingly, a recovery by Indiantown that results in a benefit to MPERS through its ownership interest in Indiantown will reduce the amount of money that needs to be appropriated by the State, thereby benefitting the State. *See, e.g., Hoover Universal*, 535 F.3d at 305-06; *Variable Annuity*, 2010 WL 2944847, at *4-5 (potential benefit of recovery would inure to state because state was required to fund agency's unfunded liabilities).

Century points to *Roche v. Lincoln Prop. Co.*, 175 Fed. App'x. 597, 601 (4th Cir. 2006) and *Accenture LLP v. CSDV-MN Ltd. P'ship*, No. 06-CV-1720, 2006 U.S. Dist. LEXIS 93357 (N.D. Ill. Dec. 27, 2006), for the proposition that a judgment against a retirement investment fund whose expenses were assessed solely against the fund, and not the state treasury, would not affect the state, and therefore was not an arm of the state for diversity jurisdiction purposes. Yet the proper inquiry here is "whether any recovery by the entity will insure to the benefit of the State." *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal*, 535 F.3d 300, 303 (4th Cir. 2008) (quotation omitted). Accordingly, the cases cited by Century addressing whether a state will be liable for a judgment against the defendant, in the course of determining whether

that defendant is an arm of the state, are inapposite here.

Simply put, if the judgment reduces the need for future state appropriations to MPERS, then a benefit has been conferred on the state for purposes of the arm-of-state analysis. *See, e.g., Hoover Universal*, 535 F.3d at 305-06. Such is the case here. By statute, MPERS' unfunded liability must be funded by state appropriations. Mo. Rev. Stat. § 104.070. According to MPERS 2010 Annual Financial Report, MPERS has a substantial unfunded liability amounting to nearly 60% of its actuarial accrued liability. Thus, the portion of Indiantown's recovery flowing to MPERS would reduce the amount of unfunded liability for which the state of Missouri is liable. *See W. Va. Inv. Mgmt. Bd.*, 2010 WL 2944847, at *5 (holding that state retirement fund's recovery would benefit the state, even though its funds are in a separate fund within the State treasury and cannot be used for anything but the payment of members' retirements, because the statutory mandate required the state to make up any unfunded liabilities). Accordingly, the first factor weights in favor of MPERS being an arm of the state.

As to the second factor, although MPERS has some autonomy, can sue and be sued, promulgates its own regulations, and signs contracts, Mo. Rev. Stat. §§ 104.210, 104.240, MPERS is governed by an eleven-member board of trustees, seven of whom are appointed by the State, Mo. Rev. Stat. § 104.160 (members include three members of state highway and transportation commission, superintendent of the highway patrol director of department of transportation, a senator, a member of the house of representatives, two active employee members of the system, and two retirees of the system). Moreover, MPERS's authority is limited by statute, and it is subject to audit by the state auditor and must provide its financial statements to the Governor. Mo Rev. Stat. § 104.190. MPERS is further required to meet and keep its principal office in Missouri, may rely on state attorneys for legal representation, and is exempt

from state tax, all of which indicate state control under the reported decisions. Mo. Rev. Stat. §§ 104.180, 104.190, 104.230.

Century contends that MPERS has autonomy in many respects. MPERS is created as a "body corporate," can sue and be sued, promulgate its own binding rules and regulations, appoint staff and enter into written contracts. Mo. Rev. Stat. §§ 104.020, 104.150, 104.170, 104.210, 104.240. Century also points to the Board's management of the funds in the system and statutory proclamation that "funds of the system shall not be commingled with any funds in the state treasury." Mo. Rev. Stat. §§ 104.070, 104.150. Century further contends that MPERS is not an arm of the state because the Board, on behalf of the system, has the ability to "purchase, acquire, hold, invest, lend, lease, sell, assign, transfer, and dispose of all property, rights, and securities . . ." *Id.* at 104.150(1).

Century correctly points out that the fact that MPERS is governed by an eleven-member Board of Trustees, seven of whom are appointed by the state, is not dispositive in determining whether MPERS is an arm of the state. *See Auer v. Robbins*, 519 U.S. 452, 456 (1997) ("While the Governor appoints four of the board's five members, . . . the board is not subject to the State's direction or control in any other respect. It is therefore not an 'arm of the State' . . . ."). Although autonomy is not in and of itself dispositive that an entity is not an arm of the state, courts have held that:

> the power to sue in the entity's own name, when coupled with other powers of self determination typically held by distinct juridical entities (power to contract, power to buy, power to hold and sell property), undeniably affords the entity some additional independence from the State . . .

*Univ. Of R.I. v. A.W. Chesterton Co.,* 2 F.3d 1200, 1207 (1st Cir. 1993); *see also Woods v. Ronduout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 243-44 (2d Cir. 2006)

(concluding the identification of the entities as "bod[ies] corporate" weighed against a finding as to the specific entity being an arm of the state).

Indiantown responds by pointing out that "many entities that can sue or be sued in their own names have been held to be arms of the state." *Cal. Pub. Emps. Ret. Sys. v. Moody's Corp.*, Nos. C 09-03628 SI, C 09-03629 JCS, 2009 WL 3809816, at *5 (N.D. Cal. Nov. 10, 2009) (collecting cases). Likewise, courts have repeatedly held that state retirement systems are arms of the state notwithstanding their corporate status and powers to sue or be sued, promulgate rules, and enter contracts. *See, e.g., Ernst v. Rising*, 427 F.3d 351, 360-61 (6th Cir. 2005) (finding Michigan's retirement system for state-court judges and other state officials to be an arm of the state); *McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001) (finding the New York Retirement System to be an arm of the state); *Fitzpatrick v. Bitzer*, 519 F.2d 559, 561 565 (2d Cir. 1975) (finding the Connecticut State Employees' Retirement System to be an arm of the state); *W. Va. Inv. Mgmt. Bd. V. Variable Annuity Life Ins. Co.*, No. 2:09-CV-01335, 2010 WL 2944847, at *4-5 (S.D. W. Va. July 26, 2010) (mem. op.) (finding the West Virginia Public Retirement Board to be an arm of the state); *Sculthorpe v. Va. Ret. Sys.*, 952 F. Supp. 307, 309-10 (E.D. Va. 1997) (finding the Virginia Retirement System to be an arm of the state). Not unlike the retirement systems above, MPERS is an employee retirement system for employees of the Missouri Department of Transportation and Missouri State Highway Patrol *See* Mo. Rev. Stat. § 104.030.

Many of the indicia of state control that were present in the foregoing cases are also present here. A majority of MPERS's board members are appointed by state officials. Mo. Rev. Stat. § 104.160 (7 of 11 members of MPERS's board appointed by the State). Indeed, it is "[v]ery significant" to the arm of state analysis that the majority of members of the MPERS

9

board are selected by state officials. *Md. Stadium Auth.*, 407 F.3d at 264.

The state also asserts control over MPERS through funding. By statute, MPERS is funded by contributions from state agencies: the Missouri Department of Transportation and Highway Patrol. It cannot be funded by payroll deductions from an employee. Mo. Rev. Stat. § 104.060. Moreover, in 2010, the "required state contribution" was over 45% for the non-uniformed payroll and nearly 60% for the uniformed payroll. MPERS highlights this state control over its funding in its financial report:

> Due to the nature of MPERS's reliance on funding from . . . MoDOT and the . . . MSHP and control of the overall plan document by the legislative and executive branches of state government, MPERS is considered a part of the State of Missouri financial reporting entity and is included in the State's financial reports as a component unit shown as a pension trust fund.

Century's attempt to distinguish MPERS from PSRS, found to be an arm of the state in *Scott*, on the ground that MEPRS is "not subject to statutory mandates dictating how much may be contributed and by whom" is unavailing. Missouri asserts at least as much control over MPERS's funding as it does over the funding of PSRS. *Cf. Scott*, 2010 WL 3749210, at *7 (holding that PSRS is an arm of the state even though Missouri only indirectly controls PSRS's funding by requiring equal contributions from members and employers).

A further indicator of state control present here is the power of the state to oversee the fund's activities. MPERS must provide annual reports to the Governor of Missouri. See Mo. Rev. Stat. § 104.190(1). The state auditor must also review MPERS's records every three years and report to the board and the Governor of Missouri. *Id.* at 104.190(4). These indicators of state control were also present in many of the above-referenced cases finding state retirement plans to be arms of the state, notwithstanding their corporate status and power to enter contracts, sue or be sued, and promulgate rules. *See Ernst*, 427 F.3d at 360 ("The retirement system must present

an annual report each fiscal year to the governor and legislature 'regarding the financial, actuarial, and other activities of the retirement system.'"); *W Va. Inv. Mgmt. Bd.*, 2010 WL 2944847 at *6 ("[The Board] is required to undergo an annual audit and report its operational status to the Governor, State Treasurer, State Auditor, President of the Senate and Speaker of the House."); *JMB Grp. Trust IV*, 986 F. Supp. at 538 (board required to prepare and submit to the general assembly an annual audit report and proposed budget); *MOSERS*, 2010 WL 318652, at *1 ("MOSERS must report to Missouri's Governor about its financial condition" and "Missouri's state auditor must review MOSERS's annual audits and report findings to the Governor."). Similarly, in this case, MPERS's possession of these powers are insignificant in the arm-of-state analysis when compared to the ways that the state asserts control over MPERS.

Still another indicator of state control present in some of the foregoing cases and also present in this case is the statutory requirement that MPERS establish its headquarters in the state capital and utilize the state attorney general as counsel. *Compare* Mo. Rev. Stat. § 104.190(3) (MPERS principal office must be in Jefferson City) *and id.* 104.230 (attorney general shall furnish requested legal services to MPERS) *with Ernst*, 427 F.3d at 360 ("state attorney general is legal advisor to the system") and *MOSERS*, 2010 WL 318652, at *6 (MOSERS must be located in state capital and state lawyers may offer it legal counsel). While MPERS does retain some degree of separation from the state, the amount of state control exercised over MPERS weighs in favor of MPERS being an arm of the state.

As to the third factor, MPERS provides a state governmental function by providing benefits to government employees. *See, e.g., McGinty*, 251 F.3d at 97-98. Century contends that while MPERS provides a benefit to state governmental employees, these employees in turn serve the local municipalities within the State of Missouri by providing services through the Missouri

11

Department of Transportation and the Missouri State Highway Patrol. This argument is without merit. The case law is clear that provision of such benefits is a state governmental function. *MOSERS*, 2010 WL 318652, at *6; *see also McGinty v. New York*, 251 F.3d 84, 97-98 (2d Cir. 2001) (finding that state retirement fund "assist[ed] the business of the state by enabling the state to meet its pension and benefits obligations"). It makes no difference that the state employees receiving the benefits provided services in municipalities within the state. Consequently, the third factor weighs in favor of MPERS being an arm of the state.

Finally, as to the fourth factor–how state statutes and case law describe the entity– MPERS' enabling statute defines it as "an instrumentality of the state." Mo. Rev. Stat. § 104.020. Century maintains that while Mo. Rev. Stat. § 104.020 defines MPERS as an instrumentality of the state, this is not dispositive and Missouri's statutory scheme provides MPERS with a significant degree of independence. Regarding the fourth factor, however, there is really no dispute. By statute, MPERS is an "instrumentality of the state." Mo. Rev. Stat. § 104.020. MPERS's financial report likewise states that MPERS is "an instrumentality of the State of Missouri." The fourth factor also weighs in favor of MPERS being an arm of the state.

Moreover, a federal district court in Missouri recently determined that two of MPERS' sister retirement systems were "arms of the state" of Missouri. *See, e.g., Mo. State. Emps. Ret. Sys. v. Credit Suisse, New York Branch*, No. 09-4224-CV-C-NKL, 2010 WL 318652, at *6 (W.D. Mo. Jan. 21, 2010) (granting retirement system's motion to remand because the system was an arm of the state which destroyed diversity jurisdiction); *Scott v. Pub. Sch. Ret. Sys. of Mo.*, No. 09-4241-CV-C-NKL, 2010 WL 3749210, at *7-8 (W.D. Mo. Sept. 21, 20100) (granting motion to dismiss claims against retirement system on the ground that system was an arm of the state that could not be sued for damages in federal court). Taken together under this

Circuit's arm-of-state rubric, MPERS is an arm of the state of Missouri.

Because Indiantown is a limited partnership and its citizenship is that of all of its limited and general partners, whose citizenship in turn is that of their members, Indiantown's citizenship is determined in part by MPERS's citizenship. *See, e.g.*, *Scenera Research LLC v. Morris*, No.5:09-CV-412-FL, 5:09-CV-439-FL, 2011 WL 666284 (E.D.N.C. Feb. 14, 2011). Thus, because MPERS is stateless for purposes of diversity, Indiantown is also stateless for diversity purposes.

Indeed, a very recent case from the Eastern District of North Carolina confirms this result. In *Morris*, one sub-member of the plaintiff LLC was "stateless" because she was a United States citizen domiciled abroad, had no domicile within any state, and therefore was not a citizen of any state. *Morris,* 2011 WL 666284, at *4-*5. That one sub-member's "stateless" status defeated diversity jurisdiction and mandated remand. Although the plaintiff LLC in *Morris* argued that it would be improper to impute the statelessness of the LLC's sub-member because that would "'erase the status of all [its] other members,'" the court disagreed. *Id.* "In short, a suit by or against such an unincorporated association is in actuality a suit by or against each of its several members for diversity purposes." *Id.* (citing *Carden*, 494 U.S. at 496). As such, the stateless sub-member "is a party for diversity purposes, and even one stateless party on either side of the lawsuit destroys diversity jurisdiction. *Id.* (citations omitted). "[A] limited liability company that has even a single stateless member or submember may not sue or be sued in federal court if diversity under § 1332(a)(1) is the only basis for the court's jurisdiction." *Id.* (citing *Swiger v. Alleghany Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008).

Century is not entitled to the benefit of any doubt here. To the contrary, the Fourth Circuit has instructed that "if federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*,

29 F.3d at 151. Accordingly, this case is remanded to North Carolina State court.

## IV. CONCLUSION

This Court finds that MPERS is an arm of the state of Missouri and is "stateless" for purposes of diversity jurisdiction. Because a limited partnership with even one stateless member or sub-member may neither sue or be sued in federal court where § 1332(a)(1) is the only basis asserted for federal jurisdiction, the court finds itself without subject matter jurisdiction over these actions. Consequently, it is hereby **ORDERED** that Indiantown's Motion to Remand (Doc. 4) is **GRANTED.**

Signed: August 23, 2011

Richard L. Voorhees
United States District Judge